# Exhibit D

BBG

2018 OCT 30  PM 2: 27

### GRANT AGREEMENT
### BETWEEN THE
### U.S. AGENCY FOR GLOBAL MEDIA AND OCFO
### MIDDLE EAST BROADCASTING NETWORKS, INC.

### FAIN: MN01-19-GO-00001

GRANT FUNDS TABLE

|  | FY 2019 PROGRAM PLAN | Previous Award Total | Initial Award | New Award Total | Currency gain/(loss) (Informational) |
|---|---|---|---|---|---|
| **FUNDING** | Continuing Resolution | N/A | $9,273,000 | $9,273,000 | None Reported |

Preamble

This Grant Agreement ("Agreement") is between the **U.S. AGENCY FOR GLOBAL MEDIA** [1](hereinafter "USAGM") and **MIDDLE EAST BROADCASTING NETWORKS, INC.** (hereinafter "Non-Federal Entity"), a nonprofit organization incorporated in the District of Columbia.  USAGM enters into this Agreement under the authority provided by the U.S. International Broadcasting Act of 1994, as amended, 22 U.S.C. §§ 6201 et seq. (the "International Broadcasting Act") and other authorization or appropriation acts that provide authority for such activities.  The Catalog of Federal Domestic Assistance (**CFDA**) **Number** for USAGM is **90.500.** The **DUNS Number** for the Non-Federal Entity is **138393819.   The Federal Award Identification Number (FAIN) for this Award for Financial Assistance is MN01-19-GO-00001.**

WHEREAS, USAGM is the United States Government agency responsible for non-military U.S. Government-funded international broadcasting pursuant to the authorities set forth in the International Broadcasting Act;

WHEREAS, the purpose of the activities supported by the International Broadcasting Act is to "promote the right of opinion and expression, including the freedom 'to seek, receive, and impart information and ideas through any media and regardless of frontiers,' in accordance with Article 19 of the Universal Declaration of Human Rights;" Id. § 6201 (1)

WHEREAS, USAGM's mission is "to inform, engage, and connect people around the world in support of freedom and democracy;"

WHEREAS, in furtherance of this mission and as authorized by the International Broadcasting Act, USAGM makes and supervises a grant to the Non-Federal Entity for broadcasting and related activities in order to provide news and information to countries that have limited or no access to

---

1 On August 22, 2018, The Broadcasting Board of Governors (BBG) officially changed its name to the U.S. Agency for Global Media (USAGM).

BBG

2018 OCT 30 PM 2: 28

free press and media, and, in furtherance thereof, USAGM has decided to make a grant for these purposes pursuant to the terms and conditions stated herein; and

OCFO

WHEREAS, USAGM believes that it would be in the interests of United States International Broadcasting (USIB) and the USAGM mission to take advantage of the operational independence and flexibilities of its private nonprofit Non-Federal Entities, while giving due consideration to the requirements of the International Broadcasting Act and other federal laws and regulations that are applicable to Non-Federal Entities, including the statutory requirement that duplication of language services and technical operations between the Non-Federal Entity and USAGM or USAGM-sponsored broadcasting entities will be reduced to the extent appropriate, as determined by USAGM.

NOW, THEREFORE, USAGM agrees to make, and the Non-Federal Entity agrees to accept, the grant of funds in accordance with the following provisions:

Article I – THE GRANT

a.    Amount of the Grant. USAGM hereby grants the amount of $_9,273,000_ (the "Grant Funds"), provided by the Continuing Appropriations Act, 2019, Division C of P.L. 115-245 (September 28, 2018), to Non-Federal Entity for the purposes and subject to the terms and conditions stated herein.

b.    Use of the Grant Funds. The Non-Federal Entity may use the Grant Funds solely for planning and operating expenses related to international broadcasting and administration thereof. The Grant Funds are provided solely for the purposes and in the amounts approved by USAGM and as set forth in the Approved Financial Plan (as such term is defined in Article VI hereof and subject to the review procedures and adjustments described therein).

c.    Funds provided under a partial year, Continuing Resolution (CR) are subject to the terms and conditions set forth in Article VI(a)(5) and those otherwise required under a partial year, CR.

Article II – PROGRAMMING PRODUCED WITH GRANT FUNDS

a.    Non-Federal Entity shall use the Grant Funds to provide news and information programming that is consistent with the relevant principles and standards set forth in the International Broadcasting Act and the strategy for USIB as determined and implemented by the USAGM.[2]

b.    The Non-Federal Entity shall produce news and information programming in the language(s) described in the Approved Financial Plan, as defined in Article VI of this Agreement. Upon USAGM's request, the Non-Federal Entity shall provide to USAGM a detailed written schedule of the programs produced with the Grant Funds, including the

---

[2] Under authority delegated by the Board of the USAGM, the Chief Executive Officer (CEO) exercises all of the Board's delegable authorities for day-to-day operation of the Agency, including with respect to the Non-Federal Entities.

BBG

2018 OCT 30 PM 2:28

languages and media in which such programs were produced.

## Article III – DISTRIBUTION OF PROGRAMMING PRODUCED WITH GRANT FUNDS

a.  Subject to the limitations of Article III(c), the Non-Federal Entity acknowledges and agrees that USAGM is authorized to provide for distribution of the programming that is paid for with the Grant Funds over the global network of broadcasting and transmission facilities owned and/or operated by USAGM or, as the case may be, through affiliated networks arranged by USAGM ("USAGM's Global Distribution Network"). Subject to the limitations of Article III(c), the Non-Federal Entity shall provide the programming that it produces with the Grant Funds to USAGM for distribution over USAGM Global Distribution Network.

b.  The Non-Federal Entity may not use Grant Funds for the purpose of concluding agreements with affiliates, except as approved in writing by USAGM. Unpaid affiliate agreements must be consistent with the USAGM's strategy for USIB, as described in Article II (a).

c.  The Non-Federal Entity grants to USAGM a worldwide, non-exclusive, royalty-free and perpetual license to broadcast, use, distribute and create derivative works from those of the Non-Federal Entity's original programs that contain no materials provided by or licensed from any third parties. The Non-Federal Entity grants to USAGM a worldwide, non-exclusive, royalty-free license to broadcast and otherwise use those of the Non-Federal Entity's programs that are legally available for such licensing and use. When obtaining materials from third parties for inclusion in its original programming, the Non-Federal Entity agrees to use reasonable best efforts to secure sufficient rights to permit the Non-Federal Entity to license to USAGM (on a non-exclusive, worldwide and royalty-free basis) the right to broadcast the resulting original programming; provided, however, that the Non-Federal Entity shall not be required to do so where the acquisition of such rights would materially and detrimentally affect the Non-Federal Entity's ability to secure its own license from said third parties. The Non-Federal Entity shall provide, without charge, information concerning, and DVD or other electronic copies of any of its programs to USAGM upon USAGM's request.

d.  The Non-Federal Entity hereby grants to USAGM, and USAGM hereby accepts, an irrevocable, royalty-free, fully paid-up, non-exclusive, sublicense-able, perpetual license during the Grant Term to use the Non-Federal Entity's registered and unregistered trademarks. USAGM's use of the Non-Federal Entity's trademarks shall be limited to use in conjunction with broadcasting or otherwise disseminating the Non-Federal Entity's materials to USAGM's audiences for the purpose of furthering the USAGM mission.

## Article IV – COOPERATION WITH USAGM GOVERNANCE OF UNITED STATES INTERNATIONAL BROADCASING

As a condition of its receipt and use of the Grant Funds provided hereunder, the Non-Federal Entity shall cooperate with USAGM's governance of USIB under the International Broadcasting Act as follows:

a.   The Non-Federal Entity acknowledges that certain authorities of USAGM under the International Broadcasting Act are non-delegable, including those listed in Attachment A, meaning that USAGM has sole and exclusive authority to determine USIB strategy and policy and that the Grant Funds are intended to promote and implement such USAGM-sponsored strategy and policy.

b.   The Non-Federal Entity's articles of incorporation, by-laws or other constitutional documents shall provide that the Board of Directors of the Non-Federal Entity shall consist of the current members of the USAGM established under the International Broadcasting Act and of no other members.   The Board of Directors shall make all major policy determinations governing the operations of the Non-Federal Entity and shall appoint and fix the compensation of such managerial officers and employees of the Non-Federal Entity as it considers necessary to carry out the purposes of the Grant.

c.   The Non-Federal Entity shall cooperate in the processes and protocols of USAGM as follows:

1. The Non-Federal Entity acknowledges that USAGM has adopted certain rules of conduct to govern the participation and cooperation of the elements of USAGM-sponsored USIB.  Such rules of conduct are set forth in Attachment B hereto.

2. The Non-Federal Entity shall report such information to USAGM as may be reasonably requested by USAGM in the format and within the timeframe so requested.  Consistent with the USAGM's desire to foster transparency as described in the "rules of the road" in Attachment B, and in order to better enable the Non-Federal Entity to provide accurate and relevant information, where possible, USAGM's request will include information regarding the purpose of the request.

3. The Non-Federal Entity acknowledges that USAGM has delegated to the Chief Executive Officer (CEO) the authority to oversee the day-to-day management of the Federal agency and to identify, evaluate, and resolve strategic trade-offs and conflicts among the broadcasting entities, including the Non-Federal Entity, consistent with the Board's strategic guidelines and subject to the Board's continued oversight.  The Non-Federal Entity shall use Grant Funds in a manner consistent with any such delegation.

4. In order to facilitate coordinated communications among the elements of USIB, the Non-Federal Entity will seek advance approval of USAGM of any Congressional and Executive Branch communications and outreach activities undertaken with the use of the Grant Funds, provided that nothing in this paragraph, shall prevent the Non-Federal Entity (i) from responding to specific requests for information, documents or materials from Congress or the Executive Branch, or (ii) from engaging in routine correspondence or communications with Congress and/or the Executive Branch (including United States embassies), or (iii) from engaging in communications in the regular pursuit of newsgathering activities.  Upon USAGM's request, the Non-Federal Entity shall inform USAGM about such responses to requests and/or correspondence

in a timely manner. The Non-Federal Entity acknowledges that 31 U.S.C. §1352 prohibits Non-Federal Entities from using appropriated funds to pay any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the making, extension, continuation, renewal, amendment, or modification of any Federal grant. This provision shall not apply to any communications or outreach activities of any Director of the Board of Directors of the Non-Federal Entity who is a Governor of the USAGM at the time such communication or outreach activity is undertaken.

5. The Non-Federal Entity shall not disclose any information expressly designated in writing as confidential by USAGM to any third party not authorized by USAGM to receive it. USAGM shall provide to the Non-Federal Entity a copy of the written standards and procedures used by USAGM in designating information as confidential. The Non-Federal Entity shall require each Non-Federal Entity employee and contractor with access to USAGM-designated confidential information to enter into a written undertaking of confidentiality consistent with this paragraph. The Non-Federal Entity further agrees to take all steps reasonably necessary to protect the confidentiality of the confidential information and to prevent the confidential information from falling into the public domain or into the possession of unauthorized persons. The Non-Federal Entity shall have no obligation of confidentiality with respect to information that (A) was known to the Non-Federal Entity prior to receiving any of the confidential information from USAGM, (B) has become publicly known through no wrongful act of the Non-Federal Entity, or (C) was received by the Non-Federal Entity from a third party without restriction as to the use and disclosure of the information.

6. The Non-Federal Entity shall participate in activities of the International Broadcasting Bureau (IBB) Coordinating Committee in accordance with the International Broadcasting Act.

## Article V – MUTUAL ASSISTANCE TO PROMOTE UNITED STATES INTERNATIONAL BROADCASTING

a.   In the spirit of cooperation among USAGM-sponsored entities and in order to promote the efficient use of Grant Funds and Agency resources, USAGM and the Non-Federal Entity will use their reasonable best efforts to render assistance to each other to promote the interests of USIB and the implementation of USAGM's strategy.

b.   Upon USAGM's request, the Non-Federal Entity shall make reasonable efforts to provide or facilitate provision of administrative or other services or resources to USAGM or other USAGM-sponsored broadcasting entities in order to promote implementation of USAGM's strategy. Grant Funds shall be available for in-kind services to the USAGM or other USAGM-sponsored entities where cost effective and consistent with the USAGM strategic plan as determined by USAGM. USAGM shall not be required to reimburse the Non-Federal Entity for Grant Funds used to provide such in-kind services nor otherwise to supplement the Grant Funds provided hereunder. USAGM will endeavor to make such

requests in a manner that does not interfere with the Non-Federal Entity's ability to discharge its responsibilities under this Agreement and, where necessary to achieve the request, to provide resources to assist the Non-Federal Entity in fulfilling such requests. The Non-Federal Entity shall notify USAGM of any expenditures it makes on provision of in-kind services to USAGM and other USAGM-sponsored entities.

c.    All assistance contemplated under this Article V shall be rendered in a manner consistent with applicable law and regulations.

## Article VI – ADMINISTRATION OF THE GRANT

a.    Development and Review of the Approved Financial Plan

1.  Definition. As used in this Agreement, the term **"Approved Financial Plan"** shall mean (i) the financial plan for use of the Grant Funds that is approved by USAGM in accordance with the procedures set forth in this Article VI; (ii) any modification to such plan that is approved by USAGM during the term of this Agreement; and (iii) any proposal or modification of such proposal during a Continuing Resolution as referenced in Article VI (a) (5) below.

2.  Financial Plan Required. Unless otherwise determined by USAGM, within 30 calendar days (or, if the same is on a U.S. federal holiday, the first business day occurring thereafter) of entering into this Agreement (or, as the case may be, any amendment to this Agreement which alters the amount or purpose of Grant Funds available), the Non-Federal Entity shall submit to USAGM a proposed detailed financial plan consistent with the strategy, purposes, and language services approved by USAGM and covering the full amount of the Grant.

3.  Financial Plan Detail. The Non-Federal Entity's proposed financial plan shall delineate the Non-Federal Entity's anticipated monthly expenditures for each budget line item, anticipated monthly expenditures for each office and language service, and any additional detail required by USAGM. Budget line items will be defined by the USAGM in order to ensure uniformity.

4.  Approval of the Proposed Financial Plan. USAGM shall transmit any disapproval of the proposed financial plan within 30 days of its receipt from the Non-Federal Entity. If USAGM has not notified the Non-Federal Entity of its disapproval within 30 days of receiving the plan, the plan shall be deemed approved.

5.  Financial Plan during a Partial Year Continuing Resolution (CR). If appropriations for the full year amount of the Grant Funds are not available to USAGM at the time that the Non-Federal Entity enters into this Agreement, the Non-Federal Entity shall provide, with each request for funding, an explanation of funding requirements for the period covered by the funding request and two subsequent months. Unless otherwise determined by law or approved by USAGM, such requirements shall include only the minimum amounts of Grant Funds reasonably necessary to sustain current operations

under the partial-year Continuing Resolution. No later than 30 days after enactment of an appropriation covering the fiscal year, the Non-Federal Entity shall submit a proposed detailed financial plan for approval in accordance with paragraphs one (1) through four (4) of this subsection. The Non-Federal Entity shall operate at a rate of obligation under its CR financial plan until USAGM approval in accordance with this paragraph.

b.     USAGM will provide the Grant Funds to Non-Federal Entity by the U.S. Treasury electronic funds transfers through the Automated Clearing House System. USAGM will make disbursements in monthly increments or on such other basis as may be consistent with the Approved Financial Plan.

c.     Reporting and Review of Use of Grant Funds

1.  Monthly Reports. Unless otherwise approved by USAGM, twenty (20) days after the end of each month, except following the final month of the fiscal year, when this period shall be 30 days, the Non-Federal Entity shall provide to USAGM a report (Monthly Reports shall include a Federal Financial Report (SF-425) and Statement of Obligations and Disbursements (SOD)), for such month, of obligations and cash disbursements in U.S. dollars with the level of detail described in Article VI(a)(3), together with such additional information as USAGM may request from time to time. As requested by USAGM, the Non-Federal Entity shall justify in detail its use of Grant Funds against items defined in the Approved Financial Plan.

2.  Other Reviews. The Non-Federal Entity shall prepare and submit to USAGM such other reviews and reports on expenditures and obligations as USAGM may request on a schedule to be provided periodically by USAGM.

3.  Report on Vacancies. Not later than the 21 days after the end of each fiscal quarter, the Non-Federal Entity shall submit a report to USAGM listing personnel vacancies as of the end of the quarter. This report should be organized by division and include the Position Title, Grade Level, Annual Salary, Date Vacant and Expected Hire Date. The provision of such report to USAGM is solely to facilitate USAGM's budget planning and reporting to Congress and does not imply that the Non-Federal Entity is required to seek USAGM approval to fill personnel vacancies.

4.  Report on Equipment and Equipment Disposition. In accordance with the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for federal Award, 2 CFR §200, the Non-Federal Entity shall submit annually to USAGM an inventory of all equipment. Requests for disposition instructions concerning property purchased with Grant Funds with an estimated fair market value (at the time of such disposition) of U.S. $5,000 or more must be submitted to USAGM 120 days in advance of the proposed disposition. If USAGM has not notified the Non-Federal Entity that the disposition is disapproved, the disposition will be deemed approved.

d.     The Non-Federal Entity shall maintain at its principal offices full and complete records and

books of account, in accordance with generally accepted accounting principles, covering the financial details applicable to the Grant. The Non-Federal Entity shall maintain separate accountability for funds provided under this Agreement. The Non-Federal Entity shall expend these funds only on the operating costs authorized by this Agreement unless it receives prior written approval of USAGM to do otherwise.

e.    In accordance with 2 CFR §200.308, the Non-Federal Entity is required to report deviations from the Approved Financial Plan to USAGM. The Non-Federal Entity shall make reasonable efforts to provide prior notice of anticipated deviations. The Non-Federal Entity may not transfer Grant Funds among direct costs if the cumulative amount of such transfers exceeds, or is expected to exceed, 10 percent of the total budget in the Approved Financial Plan unless otherwise approved by USAGM.

f.    Unless otherwise approved by USAGM, the Non-Federal Entity shall provide five (5) days advance notification of any new contracts exceeding U.S. $350,000 and any new leases exceeding U.S. $200,000.

g.    Return of Funds

1.  The Non-Federal Entity shall return to USAGM at the conclusion of the fiscal year any portion of the Grant Funds that are not required for a legally binding transaction or designated by the Non-Federal Entity for a purpose and in an amount consistent with the Approved Financial Plan.

2.  Any and all interest earned on Grant Funds provided to the Non-Federal Entity pursuant to this Agreement shall be returned to USAGM on an annual basis in accordance with the requirements of 2 CFR §200.305.

3.  Expenditures by the Non-Federal Entity that are not consistent with the Approved Financial Plan or otherwise permitted by this Agreement shall be recovered by the Non-Federal Entity and promptly refunded to USAGM.

## Article VII – REGULATORY COMPLIANCE

a.    The Parties acknowledge and agree that the Parties are subject to all Federal rules and regulations pertaining to federal grants, including the following: 22 U.S.C. §§ 6201 et seq., 31 U.S.C. §§ 7502 and 1352, 41 U.S.C. § 702, the Federal Grant and Cooperative Agreement Act and implementing regulations, and 2 CFR §200.

b.    Allowability of costs incurred under this Agreement will be determined in accordance with 2 CFR §200, pursuant to certain clarifications specified in Attachment C and subject to any exceptions granted by authorization or appropriation laws.

c.    The Non-Federal Entity shall comply with the covenants and other contracting provisions set forth in Attachment D.

d.  The Non-Federal Entity shall comply with grant limitations in the International Broadcasting Act and/or any applicable appropriations statute that are expressly applicable to the Non-Federal Entity, including without limitation, those set forth in Attachment E.

e.  The Non-Federal Entity shall deliver all required certifications identified in Attachment F upon execution of this Grant Agreement.

f.  No Grant Funds may be used for the following purposes:

    1.  to pay any salary or other compensation, or enter into any contract providing for the payment of salary or compensation in excess of the rates established for comparable positions under Title 5 of the United States Code, or the foreign relations laws of the United States.

    2.  to pay first-class travel for any employee of the Non-Federal Entity, or the relative of any employee.

g.  The Non-Federal Entity shall comply with all applicable U.S. laws and regulations, including, without limitation, the copyright laws of the United States.

h.  When engaging outside the United States in activities that require the use of Grant Funds, the Non-Federal Entity shall exercise due diligence to ascertain the local laws and regulations, and other relevant local circumstances, applicable to the Non-Federal Entity's activities in the relevant country(ies) where such activities shall be undertaken. In the event that the Non-Federal Entity or any of its employees or contractors becomes subject to any fine, imprisonment, judgment, tax, or other penalty (whether civil, administrative, criminal, or otherwise) in any country as a result of the activities undertaken with the use of the Grant Funds, the Non-Federal Entity shall notify USAGM in writing of the same as soon as practicable (but, in no case later than 30 days following any such event) and shall provide such information as USAGM may request regarding the circumstances of any such penalty.

i.  Consistent with 2 CFR §200.113, applicants and recipients must disclose, in a timely manner, in writing to the Office of Inspector General (OIG) for the Department of State and the U.S. Agency for Global Media, with a copy to the cognizant Grants Officer, all violations of Federal criminal law involving fraud, bribery, or illegal gratuities potentially affecting the Federal award. Sub-recipients must disclose, in a timely manner, in writing to the OIG and to the prime recipient (pass-through entity) all violations of Federal criminal law involving fraud, bribery, or illegal gratuities potentially affecting the Federal award. Failure to make required disclosures can result in any of the remedies described in §200.338. Remedies for noncompliance, including suspension or debarment. Disclosures must be sent to: U.S. Department of State Office of Inspector General, P.O. Box 9778, Arlington, VA 22219. Website: https://oig.state.gov/hotline Phone: 1-800- 409-9926 or 202-647-3320

## Article VIII – LIMITATIONS OF USAGM OVERSIGHT

a.  The Non-Federal Entity is a private, nonprofit corporation, and nothing in this Agreement may be construed to make the Non-Federal Entity a Federal agency or instrumentality.

b.  USAGM's oversight and supervision of the Grant Funds are subject to limitations in applicable law.

c.  USAGM acknowledges and affirms the safeguards contained in the United States International Broadcasting Act of 1994 (as amended) meant to preserve the journalistic independence and integrity of USAGM programming. To that end, no U.S. Government official—including individual Governors, the CEO, the Secretary of State, and the Inspector General—may attempt to influence the content or editorial choices of one of the broadcasting entities in a manner that is not consistent with the highest standards of professional broadcast journalism or take any other action that may tend to undermine the journalistic credibility or independence of USAGM or its broadcasters. In the event that the Non-Federal Entity reasonably believes that a breach of this Article VIII(b) has occurred, then the Non-Federal Entity shall report the breach to the Chairperson of the USAGM.

## Article IX – FUNDRAISING

The Non-Federal Entity may not engage in fundraising from other sources except in accordance with the principles of fundraising to be agreed by USAGM and the Non-Federal Entity. The Non-Federal Entity is prohibited from using any Federal funds to finance its fundraising efforts.

## Article X – PERSONNEL SECURITY POLICY

a.  USAGM will perform security background investigations and provide appropriate clearance for the persons holding the positions listed in the letter to be provided by USAGM to the Non-Federal Entity following the signing of this Agreement. These security background investigations and clearances shall be performed at no cost to the Non-Federal Entity.

b.  With regard to those of the Non-Federal Entity's employees and contractors who are not identified in the letter to be provided pursuant to Article X (a), but who are determined by the Non-Federal Entity and USAGM to require background investigations and/or clearances, the Non-Federal Entity and USAGM shall establish an agreed upon protocol ("Protocol"), which shall be reduced to writing and confirmed in a letter agreement following the signing of this Agreement. The Protocol shall cover (i) the categories of persons for whom such investigations and/or clearances are required, (ii) the identity of the entity or entities that will perform the investigations and/or clearances and, where necessary, (iii) who shall cover the costs associated with such investigations and/or clearances.

## Article XI – IT NETWORK SECURITY POLICY

Any material breach of the Non-Federal Entity's IT network security policies, or any incident that materially affects the integrity or operations of the Non-Federal Entity's IT network system, shall be reported to USAGM within twenty-four (24) hours of detection. These violations shall include, but are not limited to, the following:

1. Unauthorized access to any of the social media or web site content management systems used by the Non-Federal Entity.

2. Disruption or denial of service for production or distribution systems.

3. Unauthorized modification or removal of the Non-Federal Entity data.

## Article XII – AUDITS AND INSPECTIONS

a. All records required to be kept in order to comply with the terms and conditions of this Agreement, including bid solicitations, evidence of shipment for commodities and procurement and service contracts, shall be maintained by the Non-Federal Entity for a period of three (3) years from the date of the submission of the final expenditure report, in a manner that will permit verification of the Non-Federal Entity's compliance with its representations, warranties, and obligations contained in this Agreement. If any litigation, claim or audit is started before the expiration of the 3-year period, the records shall be retained until such litigation, claim or audit has been resolved.

b. The Non-Federal Entity acknowledges the audit requirements set forth in accordance with 2 CFR §200 Subpart F.

c. Operations of the Non-Federal Entity, as related to use of the Grant Funds, may be audited by the Government Accountability Office in accordance with such principles and procedures and under such rules and regulations as may be prescribed by the Comptroller General of the United States. Any such audit shall be conducted at the place or places where accounts of the Non-Federal Entity are normally kept.

d. Representatives of the Government Accountability Office shall have access to all books, accounts, records, reports, files, papers, and property belonging to or in use by the Non-Federal Entity, pertaining to such financial transactions and necessary to facilitate an audit. Such representatives shall be afforded full facilities for verifying transactions with any assets held by depositories, fiscal agents, and custodians. All such books, accounts, records, reports files, papers, and property of the Non-Federal Entity, shall remain in the possession and custody of the Non-Federal Entity.

e. The Inspector General of the United States Department of State is authorized to exercise the authorities of the Inspector General Act of 1978 with respect to the Non-Federal Entity.

f. USAGM shall conduct an annual review to measure the Non-Federal Entity's performance

in achieving the purposes of this Agreement and compliance with its terms.  Such reviews shall be conducted at reasonable times and upon reasonable notice to the Non-Federal Entity.

g.   To ensure continuous and cooperative planning and operations hereunder, the Non-Federal Entity shall permit USAGM or its authorized representatives, including the Inspector General, to visit the Non-Federal Entity's facilities and to inspect the facilities, activities, and work pertinent to the grant, both in the United States and abroad, and to interview personnel engaged in the performance of the grant to the extent deemed necessary by USAGM. USAGM, however, shall not exercise any prepublication review of the substance of any broadcast or print publication of the Non-Federal Entity.

Article XIII – FAILURE TO COMPLY WITH THE TERMS OF THE GRANT

In the event that the Non-Federal Entity fails to comply with any material term of this Grant, then, upon the decision of the USAGM Board of Governors, USAGM shall have the right to suspend or terminate the Non-Federal Entity's use of the Grant Funds by providing written notice to the Non-Federal Entity.  USAGM shall provide advance notice of suspension or termination, except in urgent or compelling circumstances, as determined by USAGM in its sole discretion, after which the Non-Federal Entity will have ten (10) business days to bring itself in compliance with this Agreement.

In the event USAGM suspends or terminates the Non-Federal Entity's use of Grant Funds, the Non-Federal Entity shall forthwith return any portion of the Grant Funds in its possession or control to USAGM.  Any such termination or suspension shall be without further obligation by USAGM or the United States.

Article XIV – POINTS OF CONTACT

For USAGM, the following person, or anyone otherwise designated by the Chief Executive Officer, shall be deemed to be the points of contact for the Non-Federal Entity with respect to the provisions of this Agreement:

> Grant Turner
> Chief Financial Officer
> Tel:  (202) 203-4845
> Email: gturner@USAGM.gov

For the Non-Federal Entity, the following persons, or anyone otherwise designated by either of them, shall be deemed to be the points of contact for the Non-Federal Entity with respect to the provisions of this Agreement:

BBG

2018 OCT 30  PH 2: 28

Kelley Sullivan
Vice President for Finance and Administration    OCFO
Tel: (703) 852-9270
Email: ksullivan@alhurra.com

## Article XV – AMENDMENTS

The terms of this Agreement may be amended by mutual written consent between USAGM and the Non-Federal Entity.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the day and year specified below:

**MIDDLE EAST BROADCASTING NETWORKS, INC.**

BY _____

Alberto M. Fernandez
President

DATE 10|29|18

**U.S. AGENCY FOR GLOBAL MEDIA**
**International Broadcasting Bureau**

BY _____

John F. Lansing
CEO & Director

DATE 10.29.8

**ATTACHMENT A**

| NON-DELEGABLE USAGM AUTHORITIES |
|---|
| 1. To supervise all broadcasting activities conducted pursuant to International Broadcasting Act, the Radio Broadcasting to Cuba Act and the Television Broadcasting to Cuba Act. |
| 2. To review and evaluate the mission and operation of, and to assess the quality, effectiveness, and professional integrity of, all such activities within the context of the broad foreign policy objectives of the United States. |
| 3. To ensure that United States International Broadcasting (USIB) is conducted in accordance with the broadcasting standards and principles set forth in the Act: |

| Broadcasting Standards<br>USIB shall – | Broadcasting Principles<br>USIB shall include – |
|---|---|
| be consistent with the broad foreign policy objectives and the international telecommunications policies and treaties of the United States; | news which is consistently reliable and authoritative, accurate; |
| not duplicate the activities of private US broadcasters or government supported broadcasting entities of other democratic nations; | a balanced and comprehensive projection of United States thought and institutions, reflecting the diversity of United States culture and society; |
| be conducted in accordance with the highest standards of broadcast journalism; | clear and effective presentation of the policies of the United States Government and responsible discussion and opinion on those policies, including editorials, broadcast by the Voice of America, which present the views of the United States Government; |
| be based on reliable information about its potential audience; | |
| be designed to effectively reach a significant audience; | the capability to provide a surge capacity to support United States foreign policy objectives during crises abroad; |
| promote respect for human rights, including freedom of religion. | programming to meet needs which remain unserved by the totality of media voices available to the people of certain nations; |
| | information about developments in each significant region of the world; |
| | a variety of opinions and voices from within particular nations and regions prevented by censorship or repression from speaking to their fellow countrymen; |
| | reliable research capacity to meet the criteria under this section; |
| | adequate transmitter and relay capacity to support USIB activities; and training and |

|  |  | technical support for independent indigenous media through government agencies or private United States entities. |
|--|--|--|
| 4. | To review, evaluate, and determine, at least annually, after consultation with the Secretary of State, the addition or deletion of language services. | |
| 5. | To make and supervise grants for broadcasting and related activities. | |
| 6. | To allocate funds appropriated for international broadcasting activities among the various elements of the International Broadcasting Bureau and Non-Federal Entities. | |
| 7. | To submit an annual report to the President and the Congress. | |
| 8. | To appoint such staff personnel for the Board as the Board may determine necessary to carry out its functions. | |

**ATTACHMENT B**

The USAGM Board of Governors (Board) on June 3, 2011, adopted the following "rules of the road" governing Board operations and procedures and the interactions among the elements of United States International Broadcasting (USIB), namely (i) the Board; (ii) the International Broadcasting Bureau (IBB), Voice of America (VOA), and Office of Cuba Broadcasting (OCB); and (iii) USAGM's private Non-Federal Entities Radio Free Europe/Radio Liberty (RFE/RL), Radio Free Asia (RFA), and Middle East Broadcasting Networks (MBN) (collectively, "Non-Federal Entities").

The Board affirmed the following general principles of USAGM governance:

- To fulfill its statutory mission, the Board requires the elements of USIB to cooperate in working toward goals established by the Board, and implemented by the IBB, in a spirit of collegiality, transparency, mutual respect, and good communication with peers and colleagues.

- The Board will endeavor to focus its attention on issues of strategic importance as required for the Board to exercise the non-delegable authorities of the Board in the United States International Broadcasting Act of 1994 (as amended).

- The Board will rely on the IBB to assist the Board in carrying out the Board's responsibilities for decisions and oversight of U.S. international broadcasting. The Board will delegate authority to the CEO to oversee the day-to-day management of the federal agency and to identify, evaluate, and resolve strategic trade-offs and conflicts among the broadcasting entities, consistent with the Board's strategic guidelines and subject to the Board's continued oversight. The Board will require the federal and non-federal elements of USIB to cooperate with and assist the CEO in fulfilling these duties.

- In recognition of the collective decision-making authority of the Governors and their desire to leverage their collective talents to promote and enhance USIB, the Governors will work to avoid the creation of "fiefdoms" in respect of the individual elements of USIB or particular functions or authorities of the Board.

- The Board will require the management of the respective, federal and non-federal elements of USIB to faithfully implement and operationalize the Board's decisions, including revised management structures intended to improve the overall efficiency of USIB, and to cooperate fully with the Committees, the CEO, and other senior USAGM officials or reporting mechanisms on which the Board relies to inform its deliberations and decision-making.

## ATTACHMENT C

Allowability of costs incurred under this Agreement will be determined in accordance with 2 CFR §200 Subpart E with the following clarifications:

a.   All operating costs are determined to be direct costs.  (See 2 CFR §200.413)

b.   The following expenses, insofar as they are reasonable and necessary to further the purpose of the grant, are authorized. (Relevant paragraphs of 2 CFR §200, are noted in parentheses.)

   1.  Official representation expenses necessary to further the mission of Non-Federal Entity, are not to exceed the amount in the Approved Financial Plan unless otherwise authorized by USAGM.  (See Department of State Standardized Regulations (DSSR), Section 300 Representation Allowances - - 330 Prohibitions)

   2.  Capital expenditures for general purpose equipment. (See 2 CFR §200.439)

   3.  Overtime, extra-pay shift, and multi-shift premiums. (See 2 CFR §200.430)

   4.  Participant support costs (See 2 CFR §200.456)

   5.  Costs of legal, accounting, and consulting services, and related costs, incurred in connection with organization and reorganization. (See 2 CFR §200.435; §200.455 & §200.462)

   6.  Public information service costs. (See 2 CFR §200.421)

   7.  Publication and printing costs. (See 2 CFR §200.461)

   8.  Foreign travel costs as specified in the Approved Financial Plan.  (See 2 CFR §200.474)

   9.  The cost of advertising the availability of publications, recordings, or services of the Non-Federal Entity, subject to limitations in applicable law or regulation.

**ATTACHMENT D**

1.   COVENANT AGAINST CONTINGENT FEES

The Non-Federal Entity warrants that no person or selling agency has been employed or retained to solicit or secure this Agreement upon an agreement or understanding for a commission, percentage, brokerage, or contingent fee, excepting bona fide employees, bona fide established commercial or selling agencies maintained by Non-Federal Entity for the purpose of securing business. For breach or violation of this warranty, USAGM shall have the right to annul this Agreement without liability or in its discretion to deduct from the Agreement price or consideration, or otherwise recover, the full amount of such commission, percentage, brokerage or contingent fee.

2.   EQUAL OPPORTUNITY

During the performance of this Agreement, the Non-Federal Entity agrees that it will not discriminate against an employee or applicant for employment because of race, creed, color, sex, national origin, age, or handicap in accordance with all pertinent Federal laws and regulations prohibiting discrimination in employment including, but not limited to, Title VII of the Civil Rights Act of 1964, as amended; 42 U.S.C. 2000e, et seq.; section 504 of the Rehabilitation Act of 1973, as amended; 29 U.S.C. 794; the Age Discrimination Employment Act of 1975, as amended; and 42 U.S.C. 6101, et seq. The provisions of this paragraph shall apply to employment actions including, but not limited to, employment, upgrading, demotion or transfer, recruitment or recruitment advertising, layoff or termination, rates of pay or other forms of compensation, and selection for training, including apprenticeship.   The Non-Federal Entity shall continue to include in all solicitations or advertisements for employees placed by or on behalf of the Non-Federal Entity language stating that "Non-Federal Entity is an equal opportunity employer committed to work force diversity."

3.   AIR TRAVEL

The Non-Federal Entity agrees that all travel paid for with the Grant Funds will comply with the "Fly America Act" (49 U.S.C. § 40118).

4.   CONVICT LABOR

In connection with the performance of work under this grant, the Non-Federal Entity agrees not to employ any person undergoing sentence of imprisonment except as provided by 18 U.S.C. 3622 and Executive Order No. 11755, December 29, 1973, as amended.

5.   THE NON-FEDERAL ENTITY SHALL COMPLY WITH:

a.   Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000d et seq.,

which prohibits discrimination on the basis of race, color, or national origin in programs and activities receiving Federal financial assistance.

b.  Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. 794, which prohibits discrimination on the basis of handicap in programs and activities receiving Federal financial assistance.

c.  The Age Discrimination Act of 1975, as amended, 42 U.S.C. 6101 et seq., which prohibits discrimination on the basis of age in programs or activities receiving Federal financial assistance.

**ATTACHMENT E**

GRANT LIMITATIONS – MIDDLE EAST BROADCASTING NETWORKS, INC.

Not Applicable.

**ATTACHMENT F**

1.   CERTIFICATION REGARDING LOBBYING

The Non-Federal Entity shall sign the Certification (Attachment G) Concerning Lobbying Activities that it will comply with 31 U.S.C. § 1352 concerning the use of appropriated funds for lobbying activities. If no appropriated funds have been paid or will be paid for lobby activities, the Non-Federal Entity shall submit Standard Form LLL, "Disclosure of Lobbying Activities."

2.   CERTIFICATION REGARDING DRUG-FREE WORKPLACE REQUIREMENTS

The Non-Federal Entity shall sign the Certification (Attachment H) Regarding Drug Free Workplace Requirements: Drug-Free Workplace Act of 1988 that it will provide a drug-free workplace in accordance with the Drug-Free Workplace Act of 1988, 22 CFR 513, Subpart F.

3.   FEDERAL DEBT STATUS

Under OMB Circular No. A-129, the Non-Federal Entity must certify that it is not delinquent on payment of any Federal debt.  The Non-Federal Entity shall sign the Certification (Attachment I) Regarding Federal Debt Status.

4.   DEBARMENT AND SUSPENSION

Executive Order 12549 of February 18, 1986, as clarified by Executive Order 12689 of August 15, 1989, requires uniform Federal rules on non-procurement debarment and suspension from certain transactions with the Government.  The May 26, 1988 Federal Register (53 Fed. Reg. 19161) contains these rules, which, among other things, require signature by Non-Federal Entities of the Certification (Attachment J) Regarding Debarment and Suspension.

5.   STANDARDS OF ETHICAL CONDUCT

The Non-Federal Entity will publish written policy guidelines, as approved by USAGM, on conflict of interest and avoidance thereof.  These guidelines will reflect federal laws and must cover financial interest, gifts, gratuities and favors, nepotism, political activity and foreign affiliations, outside employment, and use of company assets.  These rules must also indicate how outside activities, relationships, and financial interests are reviewed by the responsible Non-Federal Entity official(s).  The Non-Federal Entity will ensure that each employee is given a copy of the policy and notified that, as a condition of employment under the grant, the employee must abide by the terms of the policy.

BBG

2018 OCT 30  PM 2: 29

## ATTACHMENT G

### Certification Concerning Lobbying Activities    OCFO

The undersigned certifies, to the best of his or her knowledge and belief that:

(1) No federal funds have been paid or will be paid, by or on behalf of the undersigned, to any person influencing or attempting to influence an officer or employee of any agency, a member of Congress, an officer or employee of Congress, or an employee of a member of Congress in connection with the awarding of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment or modification of any Federal contract, grant, loan or cooperative agreement.

(2) No registrant under the Lobbying Disclosure Act of 1995 has made lobbying contacts on behalf of the undersigned with respect to this grant.

(3) The undersigned shall require that the language of this certification be included in the award documents for all sub-awards at all tiers (including subcontracts, sub-grants and contracts under grants, loans and cooperative agreements) and that all subrecipients shall certify and disclose accordingly.

This certification is a material representation of fact upon which reliance was made when this contract was made or entered into. Submission of this certification is a prerequisite for making or entering into this transaction imposed by section 1352, title 31, U.S. Code. Any person who fails to file the required certification shall be subject to a civil penalty of not less than $10,000 and not more than $100,000 for each failure.

Middle East Broadcasting Networks, Inc.

Alberto M. Fernandez

10/29/18
Date

22 | P a g e

BBG

**ATTACHMENT H**

2018 OCT 30  PM 2: 29

Certification Regarding Drug Free Workplace Requirements OCFO
Drug-Free Workplace Act of 1988

The Non-Federal Entity certifies that it will provide a drug-free workplace by (a) publishing a statement notifying employees that the unlawful manufacture, distribution dispensation, possession or use of a controlled substance is prohibited in the Non-Federal Entity's workplace and specifying that action that will be taken against employees for violation of such prohibitions; (b) establishing a drug-free awareness program to inform employees about (1) the dangers of drug abuse in the workplace, (2) the Non-Federal Entity's policy of maintaining a drug-free workplace, (3) any available drug counseling, rehabilitation, and employee assistance programs, and (4) the penalties that may be imposed on employees for drug abuse violations (c) making it a requirement that each employee to be engaged in the performance of the grant be given a copy of the statement required by paragraph (c), (d) notifying the employee in the statement required by paragraph (a) that, as a condition of employment under the grant, the employee will (1) abide by the terms of the statement and (2) notify the employer of any criminal drug statute conviction for a violation occurring in the workplace not later than five days after such conviction ; (e) notifying the agency within ten days after receiving notice under subparagraph (d) (2) from an employee or otherwise receiving actual notice of such conviction; (f) taking one of the following actions with respect to any employee who is so convicted: (1) taking appropriate personnel action against such an employee, up to and including termination, or (2) requiring such an employee to participate satisfactorily in a drug abuse assistance or rehabilitation program approved for such purposes by a Federal, State, or local health, law enforcement, or other appropriate agency; and (g) making a good faith effort to continue to maintain a drug-free workplace through implementation of paragraphs (a), (b), (c), (d), (e), and (f).

Middle East Broadcasting Networks, Inc.

Alberto M. Fernandez

10/29/18
Date

BBG

2018 OCT 30  PM 2: 29

**ATTACHMENT I**

Certification Regarding Federal Debt Status
(OMB Circular A-129)

OCFO

The Non-Federal Entity certifies to the best of its knowledge and belief that it is not delinquent in the repayment of any federal debt.

Middle East Broadcasting Networks, Inc.

Alberto M. Fernandez

Date

BBG

2018 OCT 30 PM 2:29

**ATTACHMENT J**

Certification Regarding Debarment and Suspension

OCFO

The Non-Federal Entity certifies to the best of its knowledge and belief that its principals : (a) are not presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excided form covered transactions by any Federal department or agency; (b) have not, within a three year period preceding this grant, been convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (Federal, state or local) transaction or contract under a public transaction; violation of Federal or state anti-trust statutes; or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements or receiving stolen property; (c) are not presently indicted or otherwise criminally or civilly charged by a governmental entity (Federal, state or local) with any of the offenses enumerated in paragraph (b) of this certification; and (d) have not within a three-year period preceding this grant had one or more public transactions (Federal, state or local) terminated for cause of default.

Middle East Broadcasting Networks, Inc.

Alberto M. Fernandez

10/20/18

Date

**MBN FY 2019**
**Monthly Plan**

| | OCT | NOV | DEC | JAN | FEB | MAR | APR | MAY | JUN | JUL | AUG | SEP | FY19 Plan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Salaries & Benefits** | | | | | | | | | | | | | |
| Salaries | 4,186,165 | 3,736,576 | 3,875,568 | | | | | | | | | | 11,798,309 |
| Benefits | 993,888 | 868,287 | 1,052,210 | | | | | | | | | | 2,914,385 |
| **TOTAL, Salaries & Benefits** | 5,180,053 | 4,604,863 | 4,927,778 | - | - | - | - | - | - | - | - | - | 14,712,694 |
| **General Operating Expenses** | | | | | | | | | | | | | |
| Pers Svc Contractors/Consultants | 359,432 | 44,650 | 44,650 | | | | | | | | | | 448,732 |
| News and Video Content | - | - | - | | | | | | | | | | - |
| Licenses/Legal | 51,800 | 21,566 | 21,407 | | | | | | | | | | 94,773 |
| Program Acquisition | 280,000 | 116,000 | 100,000 | | | | | | | | | | 496,000 |
| Production Support | 513,640 | 619,873 | 506,540 | | | | | | | | | | 1,640,053 |
| Technical Support & Translation | 539,704 | 88,107 | 88,107 | | | | | | | | | | 715,918 |
| Travel | 36,525 | 60,525 | 64,025 | | | | | | | | | | 161,075 |
| Advertising and Outside Promotions | 180,000 | - | - | | | | | | | | | | 180,000 |
| Rent, Utilities | 1,024,727 | 2,450 | 23,479 | | | | | | | | | | 1,050,656 |
| Equipment | 345,856 | 217,843 | 106,800 | | | | | | | | | | 670,499 |
| Administration | 761,263 | 63,123 | 94,214 | | | | | | | | | | 918,600 |
| **TOTAL, GOE** | 4,092,947 | 1,234,137 | 1,049,222 | - | - | - | - | - | - | - | - | - | 6,376,306 |
| **TOTAL, MBN Funds Available FY19** | 9,273,000 | 5,839,000 | 5,977,000 | - | - | - | - | - | - | - | - | - | 21,089,000 |

**USAGM APPROVAL STATEMENT:** USAGM Financial Plan Approval applies to MBN's Operations for the month of October 2018, in the amount of $9,273,000. Approval of the amounts reflected on this financial plan are not to be misconstrued as a pro-rated amount of an annual budget for FY19. FY19 annual budgets will be distributed when a full-year appropriation is enacted and the FY19 USAGM Program Plan is finalized. Initiation of new programs (aka "New Starts") is prohibited under the continuing resolution (CR). Please spend prudently during the CR period.

U.S. AGENCY FOR GLOBAL MEDIA — UNITED STATES OF BROADCASTING BOARD OF GOVERNORS

FINANCIAL PLAN APPROVAL

John F. Lansing | CEO                     10.29.18
                                          Date

OCFO

2018 OCT 30 PM 2:31

BBG